Okay, now we get to McKenna. Okay, and we are hearing only the city's appeal and not the appeal of the employees. We're doing that without argument, on submission. Okay, I'm here this morning on the cross appeal for the city. May it please the court, Eleanor Ewing representing the City of Philadelphia on the cross appeal, I would ask for three minutes of rebuttal time. Granted. In Staub v. Proctor Hospital, the Supreme Court established the standard for employer liability in claims of bias or retaliation as one approximate cause. Thus, where the, and this is in cases where the actual decision maker lacks retaliatory animus. If the retaliatory act remains approximate cause of the ultimate decision, then the employer will be liable. But if the initial retaliatory act becomes too remote or indirect from the ultimate outcome, then the causal chain is broken and the original retaliatory act no longer can be considered approximate cause of the ultimate result. And how do you decide if the chain is broken? Look at the record. Isn't that the question that we have here? In this instance, because we're dealing with a Rule 50 motion as to whether or not as a matter of law, the evidence could not support a finding of the appropriate causal connection between the retaliatory animus and the adverse employment action. And when we look at the trial record here, regarding Mr. Carnation's termination from the Philadelphia Police Department, what Mr. Carnation and the city, the circumstances of the process are not really in dispute. Mr. Carnation presented evidence that his captain initiated a disciplinary process against him. Charges, in other words. The record contains undisputed evidence that Captain Calarulo lacked any authority to terminate Mr. Carnation or even to ensure that there would be a hearing on these charges. They had to go through various levels of approval, and the commissioner had to sign off to have a hearing. Once that was done, then the process was turned over to a disinterested adjudicatory body, the Police Board of Inquiry. And this board was set up with all types of due process protections to have a trial, basically, to figure out whether what happened, what was, what were the facts, and to enable the accused, Mr. Carnation, to cross-examine, present evidence if he desired, and to do all the things that courts do to have the members of the panel deliberate and determine a recommendation of discipline to be imposed. I'm sorry. Tell us a little bit about the Police Board of Inquiry, BBI. Sure. How does it get formed? Who is it part of? Well, this is all, again, I'm going to be speaking from the trial record. This is all, the board is... Who appoints it? The board is a branch, sort of, not the, you know, it's a branch of the police department. So it functions by, it appoints members to sit on these hearing panels. Who's the... They rotate. Who's the... I'm sorry. Who appoints? The police board of inquiry administration apparatus, for lack of a better term. It's not the commissioner himself or something. It is a body that is set up to process these types of charges. So what they do is there is a list of captains, lieutenants, and their officers, and they tap these people on a rotating basis. Who's the they? We're trying to find out specifically. The board. The board as an administrative entity. I mean, yeah, but the board doesn't arise, who is it that came out of the ocean, Venus or somebody? It doesn't come out. I mean, somebody appoints the board. I mean, is there a, there's a list of people who are competent to do this? Is that, or all police captains? I mean, we're just trying to, we're trying to find out how this came into being. How it, yeah. I don't want to go beyond the record as far as... But you're an assistant city solicitor, so you have to know. I don't know whether it's people who have been identified as by interest themselves or whether at a certain level you are asked, but what I do know is that there is a large number of people who are tapped, asked to be on a board, and then their regular job is whatever their either supervisory role is or their officer role is. And one of the things, one of the requirements of the board is that the accused have a person who is his peer at his level be one of the members of this board. So in Mr. Carnation's case, they would look, I'm sorry, the board would look to see who are officers at then-officer Carnation's peer level, and they would take the first one and ask them if they would be on the panel. And what does the PBI do in addition to something like this? Just give us some idea of, I just don't know. You read about it, and I'm going to fill it out then. So I read about it. Well, they, and this has changed a little bit over time. When I read the trial record, they have individuals working for the PBI who will help develop the charges, and that's more so, apparently that's changed to be more so now, but they did have some input on charges in the process at the time of Mr. Carnation's case as well. Do they do independent investigations? They are more of a deliberative group. They do not actually. So they hear the information that's presented to them. Yes. In other words, they get the captain's report, and what else do they get? What they get are charges from, suggested charges from the captain. They don't, and. Well, so, I mean, is there a response to the captain's charges, or do they just get the captain's charges and investigate a report? Well, there are charges that are signed off on, and they're part of the record. I can provide pages from the appendix. But there are the charges which the, that when these charges have gone through various, I think they went through three levels. They went through an inspector. They went through the, eventually were signed by the commissioner to approve the recommendation to have a hearing, then a hearing is set. Does Carnation have a chance to get any input in this panel before they make a decision? Yes. What? There is a hearing. Oh, okay. So how about before the hearing? Does he get to answer the charges and say they're not true, or? He disputed the charges. If you look at the charges, there is a portion for him to say. What was the charge? Guilty, not guilty. He called the captain on Memorial Day or something like that? There were two charges that Captain Colarulo brought, and interestingly enough, when the PBI ruled, they added a third separate charge. Can you be succinct about it? The charges were that he disobeyed an order by calling the captain at his residence? That was one of them, yes. One of them was that the captain, well, the first one was the captain had given him a direct order to say do not call this sergeant.  Call, this is the way we're going to set up a meeting. Can you be succinct about it? That was number one. Then number two was he called the captain at 8 o'clock on, when the captain was off duty and on vacation, using a number that he got. Can you say that he made two improper calls in disregard of the captain's orders? Well, in disregard of captain's orders, and then during the call used insulting and profane language. That's the charge. Those are the charges before the police were able to. Those are the charges that went to the hearing originally. Okay. And they accepted those charges and threw them off the police department? They added. They had a hearing on those charges. Oh, conduct unbecoming a police officer. Yes. They added the charge of conduct unbecoming a police officer. Based on those calls. Well, during the trial, Mr. Carnation testified, and I cannot tell you exactly what he meant by it, but he said something, oh, that was added about my saying I was going to kill the captain. So I don't know what that has to do with it. Well, what we're trying to get is proximate cause, which is what the Supreme Court is talking about, and just how independent is this police review board? That's right. They're set up for the purpose, Judge Fuentes, of trying to determine whether conduct occurred, rather than simply as in Staub, when you look at the facts in that case, where there was just a report of the complaining supervisor, and the HR director gets it and reads it, and reads the personnel file, no other due process, no opportunity to cross-examine, no opportunity to come in and tell your own side of the story, no opportunity to have due process proceed to have your attorney come in, and he was represented at this hearing. So this is completely the opposite side of the spectrum from the type of independent investigation, quote-unquote, that occurred in Staub. We can understand why there was no causal breakage of the link in Staub. It was pretty much that the complainer, supervisor, was making the decision. It was totally delegated to him. But when an organization, particularly government organizations, these are fairly common, that there are boards. Let me ask something. The jury did find that he was terminated, and the jury found he was terminated as a result of the captain's discriminatory animus, is that right, irrespective of the intervening police review board. Did I misstate something? The jury found that the termination was as a result of animus. Wait a minute. I didn't hear. I don't care who's talking. No, I'm sorry. Just one person. Go ahead. Please, answer your question. I'm sorry. Regardless of the intervening police review board, the jury found that there was discriminatory animus, and that resulted in his termination. And the jury found that that, in fact, led to his termination. Which resulted in our Rule 50 motion that on that record, that as a matter of law, that requisite causal link could not be found by the jury, and therefore that the jury verdict should be overturned as to that claim. Don't worry about the red light, because we've been asking questions. But you had a chance to present that to the jury, though, didn't you? You had a chance to say to the jury, look, we understand what the captain said and did and so forth, but he is not responsible for the termination. It's the police review board. Did you not have an opportunity to present that to the jury? The evidence about the police review board was presented to the jury. Again, this is purely in the context of a Rule 50 motion, that as a matter of law, that the record did not provide a sufficient basis for that causal. It is the obligation of the plaintiff to prove that there was the direct relationship, that Staub still retains that language. There must be a direct relationship between the animus and the ultimate result. And Staub also provides, they weren't really thinking of this instance, but they don't say that an independent investigation or trying to find the facts and get away from trying to find out if there is animus and filter it out totally and find out if the conduct actually occurred. They don't say that that's precluded. They talk about, they say there's no hard and fast rule here. The jury verdict in this case, though, was made in the context of our precedent in Abramson, which is that discrimination may be found if those exhibiting discriminatory animus influence the decision to terminate. That is what Abramson held. And Staub is a more stringent test. No, Staub is a different test. It is not more stringent. Do you think it's easier for the plaintiff to show proximate cause, equally as well under Staub as it could under Abramson? Well, what the district court really interpreted influence as being is having some role or participation. So really what she did was to say that if once that Captain Calarulo initiated charges, he played a role, and you can't get rid of that role in any way. And what Staub is saying is there is an ability for the employer, and there should be under Title VII, because you want the employer to be able to say, wait a minute, I don't want people terminated because of retaliatory or biased animus. I'm setting up a procedure to make sure that that's not going to happen, and that when people are terminated, it's because they did something that's worthy of it. And Staub says that if a person is terminated for reasons unrelated to the But that suggests that the captain's report and the captain's testimony before the board had no influence on that board's decision. Did it have impact? Did he have leverage over what they decided? No, he didn't ask about leverage. He said impact. What you say suggests that the captain's report, which is what the board had, and his testimony, before the board had no influence whatsoever. It is the role of a court, and I'm sure I don't have to tell it to this panel, to, at a hearing, to listen to all of the witnesses and determine who is credible and what happened. So the fact that, in every case, charges are going to be initiated. And so for this court to say, you can't get rid of that taint. Once the person makes those charges and he comes in and says the exact same thing, I would suggest that what might be helpful is there are a few cases that were pre-Staub that were similar types of panels. The Stimson case is one, and the Triplett case is another, where the courts find that there was not the requisite causal link because of these types of panels. Let me ask you a question. Is it the city's position that the jury wasn't instructed in light of Staub, which came out after the jury decided this case, and therefore does the city think it should go back for a new trial with instructions under Staub? I would like to say that, Judge Slobodur, but I think that we did not object to the jury instruction at that time. We made a Rule 50 motion. Excuse me, but you couldn't have known what Staub would decide. That's correct. And therefore, is it your position now that you would like a new trial with instructions under Staub? I believe that our ultimate position is that, as a matter of law, that the existing trial record does not support causation. But if, alternatively, yes, I think that the jury was not instructed on the lines of Staub and that Staub represents a different test that the jury could have found in a totally different way. That's basically what I was asking. Okay. He took a red light. Do you have any more questions? I have no more questions. Do you have any more questions? No. Okay. Thank you. All right. I'm pleased to support Brian Porcelli. I was trial counsel, so I probably won't be able to answer a lot of your questions. I first want to address a point. You can't answer questions because you were trial counsel? Yes, because I at least know the record pretty good. No. Aside from the reading. Oh, you can. I'm sorry. Maybe if you talk a little more slowly, then we won't mess it up. Why wasn't the panel's decision a superseding decision? The panel was not a superseding decision because, as the record will reflect, and I'll cite the numbers, is the panel hears just the same things that Calarudo says in his report. In addition to that, it's not an independent investigation. The PBI system in 1998 and 1999 are different as they are now, and that's why I pointed out the Hannon case, which this court had said was an advisory panel, which it is. It's an advisory panel. It hears the evidence from the animus supervisor, and in this record, not only did they hear from that individual who initiated the charges, he also influenced the investigation and the check checks into the discipline he wanted. He spoke to the people. As the record shows, they had meetings about this. He spoke to which people? The deputy commissioners, chief inspectors, the individuals from his line. Who is the he, the investigator? The he is Calarudo. I apologize. Oh, Calarudo. Start with the premise that Calarudo starts the events as a result of Ray Carnation calling Calarudo on Memorial Day on Sunday in the morning at 830 and waking up his wife to say he'd like to speak to Sergeant Maroney. Now, at that time, Ray Carnation is out on restricted duty status. Ray Carnation is told simply, don't call the sergeant. He calls the captain back, which initiates the insubordination charge. And the second charge, failing to obey, is calling Maroney again, which Ray Carnation explains as, you know, I thought you meant now, not later. Irregardless, Calarudo starts the process to discipline Ray Carnation and recommends dismissal. And Calarudo, we can assume, has racial animus. He's the one the jury found to have the racial animus. Now, foreseeability was a factor drawn up on page five of the opinion. And they said, you know, where it's foreseeable that the independent body is going to get involved, if it's truly an independent body, it falls within the causation chain. The PVI is exactly where Calarudo had to go. So it was foreseeable that he was going to go before this panel. Now, the panel is made up of an officer of equal rank, a lieutenant, and a captain. And they do have lists of lieutenants and captains that they can draw from. The process of how they choose them isn't really known. They just simply choose them. The officer, when the officer receives his 18s or the charges, he has two elections, plead not guilty or guilty. If he pleads not guilty, the department has two options. Now, all of this is not in the record. And the reason it's not in the record is because the city, and you'll find this at page 2831 of the appendix, objected to this evidence coming into trial. And that objection was sustained. Which was my argument, they can't raise it now. Objected to what evidence? All of the questions you want to know about the PBI process. Which is, how does it work? What's it going to do? If you look at the full record, there are only two volumes that contain the testimony that talks about the PBI, Volume 5 and Volume 7. Volume 5 is Ray Carnation's testimony, which the jury accepted. Yeah, this is a very big appendix. Yeah, we know. Right. And Volume 7, which is Kala Ruluri, he testifies. And giving him what credit you can, viewing the evidence, although favorably to Ray Carnation, the verdict winner. The fact of the matter is, all he testified to was the board hears the evidence. And what evidence does it hear? The same stuff, the same evidence that Staub says, if they hear, doesn't make them independent. What do they hear? What would be your best argument that the city of Philadelphia is at fault for Carnation's termination from the jury's verdict? I look to say they put the snowball in motion and rolled it down the hill, knowing what was going to happen at the end, intending what was going to happen. They intended for Ray Carnation to get fired from the charges. They intended for him to go. You say they. They being Kala Ruluri, the primary person who knew the process, knew how it was going to work. He's the guy that had the animus. He's the guy that influenced the charging body, which is the police board of inquiry. Back then, the charging unit was also the prosecution unit. The evidence is replete that not only did Kala Ruluri put in. How do we know that the police review board didn't make an independent determination? Are you suggesting that they could not possibly have done that? They can't. They relied on all the people that had the animus, the people who put the ball on the hill and rolled it down. There's nothing that they went out. They did not go out and ask for independent witnesses. They simply sat and heard the evidence the animus supervisor put in front of them. What does the PBI do ordinarily? I mean, what kind of cases does it handle? They hear internal disciplinary processes over the work rules, and the police department has a lot of work rules. You mean like if a policeman shoots somebody and there's a question as to whether that was justifiable or not. Does that go to the PBI? No. They have a shooting team for that. That would go in front of the district attorney's office, too. However, if it was determined that he might have violated a use of force policy in that shooting, but he may have been justified in the shooting, they might bring the officer up on a charge of exceeding the use of force policy, which would violate that rule. And then it would go in front of a board, this PBI. And the unique thing about this board is it is not a decision maker. It is only a body that can recommend something. And even if they recommend no discipline, the ultimate decision maker, the commissioner, reviews the record, not the record created at the PBI, the charge. The commissioner does not review the entire record. He circumvents that and decides his own fate. In other words, his own fate. Based on what the PBI tells him? Irregardless, and that's what Hannon was all about. Is the charges that Carnation faced the charges that normally are presented to a PBI? Yes. Yes, and it is extraordinary. I don't know ever occurring, and I've been doing that for 21 years. I said, are they the charges that normally appear before? They are the type of charges that would normally appear before that board. They are not a charging unit. Yet in this case. You did say something interesting before, that the board only hears what the captain presents. Exactly. The way the system worked in 1998 is different the way it works now. The way it worked in 1998 was there was one person who decided what a charge would be. In other words, approved it. The captain, if the captain was charged with the investigation as was here, otherwise the investigation may be done by another unit like internal affairs. Well, the captain is the charging authority, but Carnation has the opportunity to bring witnesses, doesn't he? Yes, but he doesn't always have full access. And in this record, on this record, he didn't have that ability, as he testified to. Everybody sat on the side because they were afraid. Afraid of what? Afraid of the retaliation that was going to come down from Captain Colorado. Now, let's go all the way back. Supposedly they retaliated against these three officers because they complained about the way African Americans or minority police people were being treated. That's the essence. That's the essence of what was happening. Correct. None of them were minorities. None of them. They were all whites, which was the first question when the circuit reversed and remanded, was whether or not a white individual would be protected under the retaliatory statute. And they said, well, of course it is. It's not race-based. It's based on opposition of condom. So it went back to that trial. Now, the district court before it said, look, they're not even within that protected class. And they were. They were opposers. And the protected class wasn't color, but individuals. Okay. So Officer Carnation feels that, and the other people that you represent, they were covered under Title VII up to the maximum that they could. I mean, the jury gave them more, but they were capped. You object to that, but they were capped. Right. I didn't want to go into RPO. Yeah, that's the other. But you were kind of giving me the door there. Yeah. Okay. But because he did put his termination in as part of his objection, then we get to the PBI. If I can understand your question, moving past the procedural stuff in the court, he doesn't know, really, if he's going to get fired or what the punishment's going to be. He only knows the charge. And he only knows what the guideline from the police rules book says. And it says it could be two days' termination. And the way it worked in 1998 and 1999 was Captain Colarulo had whatever facts he had to believe he should investigate Ray Carnation. That was the issue of whether his ---- He says he called me up at home and woke my wife up, my wife. Correct. He then starts his investigation, determines what charges he wants to bring against Ray Carnation, knowing the range of discipline. He then can send it up the chain, up the chain meaning to the inspector, chief inspector, deputy commissioner and commissioner, who all now see his report and what's going on. And Mr. Colarulo, no, Mr. Carnation can't say that's not true? Absolutely not. He's not even involved. The only part that he's involved in this is possibly he's finally been interrogated or questioned after the captain does his other investigations. The normal course of investigation in the police department is to believe there's a violation, then start collecting your facts, and then finally bring the officer in and confront the officer with your facts. What he had to say is basically the question based on what we think happened. After that, the captain, if it's a captain's investigation, a command level investigation, or if it's an IAEA investigation, the captain of IAEA, then decide if there's going to be charges. Do they have a right to counsel? Pardon? Do they have a right to counsel? They do not at this point. They have no rights. They have the right to union representation during the questioning. Are you representing the union? I do. I do. Okay. Is it an open proceeding? No, it's generally closed. The PBI is held at the police roundhouse in the basement, and they generally close it off. Appeal? The appeal is based on the right of the union to take it, because this is all based on the collective bargaining. So the officer's independent right to it is dictated on whether the union will decide that they're going to appeal it. In addition to that, it also depends on the punishment. If the board, for example, were to say, well, we're going to reprimand the officer, that's a non-grievable, which you refer to as an appeal, event, because it doesn't rise to the level under the collective bargaining agreement to move it up forward. You're stuck with that only. I heard Ms. Ewing talk about due process rights, as I was asking. Oh, that's a fiction. Your version is that there's no right to counsel, closed proceeding, limited right to appeal. At the proceedings, you have a right to counsel. At the hearing. You do. At the hearing, yeah. At that. And procedurally, you don't have a right to the evidence before the hearing. You kind of go in, and that's it. Whatever's there is there. Is it transcribed? They used to record it. In 98 and 99, they did transcribe it. Somewhere in 2000, they went electronic, and now, of course, when we try to get to that record in the federal level when there's civil rights actions, we may face the, well, the button didn't get pressed right, so there's no recording. So, yes, it's supposed to be recorded, there's supposed to be a record, but ordinarily that record never goes anywhere. And more importantly, only because the PBI board, the three reviewers, are only recommending discipline. They're not the final decision maker. The commissioner, who is the final decision maker, doesn't listen to that record. He simply gets a white paper. A white paper is the statements of the animus officer, the accused officer, and then he makes his own independent. So in a nutshell, go ahead. He may never see all of the evidence, and he surely never sees the record created at the PBI. What's the point of the proceeding? Well, the proceeding was developed by Commissioner Johnson. Is it to make a recommendation to the commissioner? Exactly. It's nothing more than an internal agency review. That's why in my brief I said this is not an independent body. This is part of the process, and it's only like a one-level review process. And even if they disagree, the discipline is warranted. That is only advisory. So therefore it's your position that this doesn't fall within store because there's no break. There's no independence. It's foreseeable. The discriminatory animus of Kalarulu really affects what came out. True. And it's pointed out in Staub's On Page 5. They call it a statement. Not only does this board get the statement, they get to hear from Kalarulu. They are completely immersed in the animus testimony. And anybody who operates in front of that board knows it's referred to, quote, unquote, as a kangaroo just because there's a rule, an unwritten rule, which is you don't find for a lower-ranking officer on the words of a higher-ranking officer. There's a rule? That's an unwritten rule. Anybody who practices it realizes it. Polices, they like to say we're a paramilitary organization. And one of the things you need in a paramilitary or a military organization is command. You need that when there's an order. You might have misstated. You meant you don't find for the lower-ranking officer against the word of the higher-ranking officer. Yes, if I said it in reverse, I misspoke myself. In this case, really this case isn't the one really to see whether Staub's blind because we simply don't have an independent body. We have a body that's foreseeable to the animus officer, and the body is not the ultimate decision-maker. It's just the wrong and the facts. You just say it's a matter of law. As a matter of law, the city's burden, as noted on Page 5, is to present the evidence at trial that this body is independent. And when I tried to do it at trial, and that's why I pointed to Page 23, they objected. They wouldn't do it? They objected. Now they want to come back and say, oh, this is all wrong. They had a chance to get a record. Your argument is that it was their burden and they failed in their burden. Correct. And therefore he should get his $421,000, whatever. Actually, I think they should get the $10 million. I keep looking for that door. But whatever. And that's your bottom line. Right. It's just the May call. The issue is very simple on that one, and I did it in the fifth. You can go beyond the pleadings on May call, and the district court below simply said, look, it's not in the complaint. I ruled, and it's irrelevant. If the termination was part of the animus, whether he pleaded or not, Article 59 says he's entitled to all the relief the law allows. That was equitable relief. He didn't get it, and neither did the two mechanics, simply because the court had ruled that she said the terminations weren't in, and that wasn't the fact after they won the verdict. Okay. Thank you. Do you have any more questions? I do not. Do you have any more questions? Okay. Thank you. Okay. You have how many minutes? Three. I was very interested in hearing all of this off-the-record jaundiced view of the PBI from a union attorney. Well, obviously he doesn't agree with you. I mean, that's why you're on different sides. Well, not being involved in these PBI hearings every day, I am being the appellate attorney. I am left with what the record was at trial, and that is the argument from which we made. And I can't even understand how there could ever be something set up by the attempted to make the thing perfect according to Mr. Puricelli. Well, Mr. Puricelli, however, he did make an important point that I'd like to get your response to, which is that it's really your burden to establish in the context of the trial that the board is an independent body, and that you, in fact, were trying to prevent him from presenting any evidence concerning the board. So maybe it's a failure of proof on your side. But the proof is there. And Judge Fuentes, I'm unfamiliar with that particular objection. But what I do know is the evidence that was accepted by what was admitted by the court, and that evidence was that this body had three people who were not involved in any of the proceedings who were the board, that there was the opportunity to come in and present evidence to have representation. I think Mr. Puricelli said that. He told a lot about what was called captain's level discipline, which is a different thing. That's when a captain handles it himself. But in this instance, it was not handled by Captain Colarulo. And, yes, of course Captain Colarulo is a witness because the charges deal with an interaction between them. But it doesn't mean that he's controlling it, or heaven forbid that this board, I mean, one of the members of this board is an officer, and he's charged in being with this board to find out what happened. Where is the evidence on the record of how the board gets set up and all that? We're told that they tried to put it in and the city objected. Is that so? Is it in there? The evidence as to how the board works is in the record and is in our brief. Yeah, but how it was set up, what it is, you know, all of the questions we were asking. The essential facts of how the PBI works, worked in those days, as far as Mr. Carnation's hearing, are all contained in the factual portion of our brief on the cross-appeal. Did you argue, I'm sorry, did you argue that Captain Colarulo's decision that he's not at fault for the termination, that it was the board that made the decision? Well, that it was the board and then the commission, the board made the recommendation based upon and then sent it to the commission that had been added by the board and terminated Mr. Carnation. Also, since we are talking about boards and material, the notice of termination indicates that there was a further appeal available, because I think you had asked about appeals, to one, possibly to the civil service board, which is what any city employee can do when terminated. And as Mr. Puricelli made reference to, there is an alternative available to union members of the FOP to have their termination reviewed by an arbitrator selected by both parties and binding arbitration. So not only was there the PBI proceeding, but the PBI proceeding was subject to two additional levels of review beyond that. And did you appeal it? No, we did not appeal because Mr. Carnation was terminated. It was his, if he wanted to appeal, he could have filed an appeal. He could have individually filed an appeal. Either with the civil service board or his union could have grieved. And it is not part of the record, but his union did grieve. The union did grieve? Yes. No. Okay. Thank you. We will take this matter under advisement. Interesting matter. Thank you.